FILED
Mar 13, 2023
02:08 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Walter McKim | ) Docket No.     2022-07-0215 |
| | ) |
| v. | ) State File No.  45805-2020 |
| | ) |
| Stansell Electric Company, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard February 22, 2023 |
| Compensation Claims | ) via Microsoft Teams |
| Allen Phillips, Judge | ) |

---

## Affirmed and Remanded

This interlocutory appeal involves a dispute over entitlement to temporary disability benefits and medical benefits. The employee injured his left shoulder and neck, and the employer provided authorized medical care for both injuries. After the physician treating the employee's shoulder released him at maximum medical improvement, the employer ceased payment of all temporary disability benefits because no other physician had restricted the employee from working. The employee continued to treat for his neck, and the physician treating that condition later stated the employee had been and continued to be restricted from working during the entire course of treatment. Both physicians had also referred the employee for pain management, and, although the employee selected a physician from a panel provided by the employer, the employee never saw the provider. At the expedited hearing, the employee sought payment of additional temporary disability benefits and the provision of additional medical treatment, including pain management. The employer responded that the employee had submitted no admissible evidence of ongoing work restrictions and that the employee had refused medical treatment. The trial court ordered the employer to pay temporary disability benefits and provide medical treatment, including pain management, and the employer has appealed. We affirm the trial court's order for temporary disability and medical benefits and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Gregory H. Fuller and Ashlee B. McGee, Brentwood, Tennessee, for the employer-appellant, Stansell Electric Co., Inc.

Peter Frech, Nashville, Tennessee, for the employee-appellee, Walter McKim

**Factual and Procedural Background**

Walter McKim ("Employee") injured his left shoulder and neck while lifting an electrical panel at work on July 21, 2020. Stansell Electric Company, Inc. ("Employer"), accepted the claim, and ultimately provided a panel of orthopedic surgeons based on a referral from Employee's initial physician. Employee selected Dr. James Weisman, who performed surgery on Employee's left shoulder to repair an impingement in December 2020. Dr. Weisman restricted Employee from working, and Employer paid him temporary total disability benefits. After the surgery, Employee continued to complain of neck pain and numbness in his left arm. He underwent an EMG, which indicated he had carpal tunnel syndrome. Dr. Weisman referred Employee to a neurosurgeon as well as to pain management, and Employer provided panels for both referrals. Employee selected Dr. John Nwofia from the pain management panel, and an appointment was scheduled for September 21, 2021. Employee did not attend the appointment, later stating he did not have transportation. Employer takes the position that Employee chose not to attend. Neither Employee nor Employer rescheduled the appointment initially.

In regard to the neurosurgical referral, Employee selected Dr. Margaret MacGregor, who saw him for the first time on September 27, 2021. At that time, Dr. MacGregor diagnosed Employee with cervicalgia and cervical radiculopathy and referred him for further diagnostic testing. At a return appointment, she determined there was no need for surgery and referred him for pain management. He also underwent a diagnostic steroid injection. Her reports were silent as to any work restrictions related to Employee's neck condition.

On January 25, 2022, Dr. Weisman released Employee at maximum medical improvement with respect to his left shoulder injury. Employer continued to pay temporary disability benefits until March 15, 2022. Although Employee continued to treat with Dr. MacGregor during this time, her treatment notes contained no reference to work restrictions.

On April 14, 2022, Employee filed a petition for benefit determination seeking payment of temporary disability benefits and authorization of additional medical treatment. Following that filing, Employee sent a questionnaire to Dr. MacGregor regarding Employee's conditions and ability to work. Dr. MacGregor responded in August 2022, stating that Employee's carpal tunnel syndrome and the recommended release surgery were not causally related to the work injury. However, the questionnaire also included the following inquiries regarding his neck condition:

1. In your professional medical opinion do you agree that Walter McKim's cervical spine complaints primarily arise out of his workplace accident . . . ?

2.  In your professional opinion do you agree that Walter McKim's cervical spine injury from which he cannot twist his neck precludes him from working from your first date of treatment, 9/27/21 to the present?

Dr. MacGregor responded in the affirmative to both questions. She also stated Employee was not at maximum medical improvement as of the time she responded to the questionnaire. In October 2022, in response to a second questionnaire, she reiterated her opinion that Employee was still disabled from working.

In the interim, Employer scheduled another appointment with Dr. Nwofia for September 22, 2022, which Employee rescheduled to September 28 due to a lack of transportation. Employee attended the September 28 appointment but declined to give a urine sample and left before seeing the physician.[1]

An expedited hearing was held in November 2022, during which Employee sought temporary disability benefits from the date they were ceased in March 2021 until he is placed at maximum medical improvement or released to return to work, relying on the questionnaire responses from Dr. MacGregor. Employee also asked that Employer be penalized for failing to timely pay benefits under Tennessee Code Annotated section 50-6-203(b)(3). Finally, Employee asked that ongoing treatment be authorized, including pain management.

For its part, Employer objected to the admissibility of the questionnaires and Dr. MacGregor's responses, arguing they were hearsay.[2] Employer further argued it did not owe temporary disability benefits due to Dr. MacGregor's apparent failure to submit timely medical reports under Rule 0800-02-17-.15(1). Employer also contended that Employee was noncompliant with treatment in his failure to see Dr. Nwofia, despite three appointments being scheduled, and that the suspension of benefits was appropriate pursuant to Tennessee Code Annotated section 50-6-204(d)(7). Finally, Employer asked for a credit for the benefits paid after January 25, 2022, when Dr. Weisman placed Employee at maximum medical improvement for his left shoulder injury.

During the expedited hearing, the trial court again determined that the signed and dated questionnaires completed by Dr. MacGregor were admissible and, based on those

---

[1] The facts surrounding this visit are in dispute. Employee alleges that, when he arrived at Dr. Nwofia's office, he used their restroom facility, and he was later unable to provide a urine sample when requested. He further stated the person who had driven him needed to leave due to a prior commitment, so he was unable to wait for the physician. Employer alleges Employee became agitated when asked to provide a urine sample and "abruptly and angrily" left Dr. Nwofia's office.

[2] Employer had previously filed a motion in limine to exclude the questionnaires, stating that the admissibility exception in the Tenn. Comp. R. and Regulations 0800-02-21-.15(2) did not apply to these questionnaires as causation was not an issue in the case. The trial court denied that motion.

questionnaire responses, awarded temporary total disability benefits from March 15, 2022, until Employee is placed at maximum medical improvement or returns to work. The court further ordered Employer to schedule appointments with Drs. Weisman, MacGregor, and Nwofia. The court declined to assess a penalty for failure to timely pay benefits, as Dr. MacGregor's records for the relevant time period did not contain any statement of restrictions preventing Employee from working. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

## Analysis

Employer raised three issues on appeal, which we restate as follows: (1) whether the questionnaires completed by Dr. MacGregor were admissible at the expedited hearing; (2) whether Employee is entitled to temporary disability benefits even though the physician did not assign any work restrictions in her medical reports; and (3) whether Employee was noncompliant with medical treatment.

### *Admissibility of Questionnaires*

Tenn. Comp. R. and Regs. 0800-02-21-.15(2) states, "Letters or written statements addressing medical causation and/or the reasonableness and necessity of treatment and medical bills signed by a physician are admissible at an expedited hearing and need not be in affidavit form." By statute, the Tennessee Rules of Civil Procedure and Tennessee Rules of Evidence apply to proceedings in the Court of Workers' Compensation Claims; however, when "the administrator has adopted an alternate procedural or evidentiary rule that conflicts with the Tennessee Rules of Civil Procedure or the Tennessee Rules of Evidence, the rule adopted by the administrator shall apply." Tenn. Code Ann. § 50-5-

4

239(c)(1) (2022). Employer contends that, despite this rule, the questionnaires are hearsay and thus inadmissible at the expedited hearing. According to Employer, the signed medical questionnaires completed by Dr. MacGregor in August and October of 2022 were unrelated to the issues of medical causation or the reasonableness and necessity of treatment. It is Employer's position that Tenn. Comp. R. and Regs. 0800-02-17-.15 permits the introduction of such questionnaires *only* when they address one or both of those topics specifically. Employer asserts the only issues addressed by the questionnaires in this case were medical restrictions and temporary disability benefits, and thus, the rule does not apply. We are unpersuaded by this argument.

In making this argument, Employer overlooks the specific purpose of the questionnaires, as well as the circumstances in which an employee is entitled to temporary disability benefits. In order to obtain temporary total disability benefits, an employee must establish: "(1) that he became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and the inability to work; and (3) the duration of the period of the disability." *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)).

In reviewing the questionnaires, we note there are no questions directly addressing disability benefits. Specifically, question two of the questionnaire asks whether Dr. MacGregor "agree[s] that [Employee's] cervical spine injury from which he cannot twist his neck precludes him from working from your first date of treatment . . . to the present?" The question asked whether the work injury prevented Employee from working and whether it is the cause of Employee's inability to work. Given that this particular question addresses the cause of Employee's disability, it falls squarely within the scope of Tenn. Comp. R. and Regs. 0800-02-21-.15(2). In short, an employee's entitlement to temporary disability benefits is a legal conclusion that is determined by considering certain factors, including medical restrictions and causation. The court properly relied on the medical information in Dr. MacGregor's responses to the questionnaire regarding the cause of Employee's disability in determining Employee was entitled to temporary disability benefits. Thus, we conclude the trial court did not err in determining the questionnaires were admissible and admitting the medical questionnaires into evidence.

*Lack of Restrictions in Medical Records*

Next, Employer argues that Dr. MacGregor's failure to include essential information in the medical records initially provided to Employer regarding Employee's ability to work is fatal to Employee's claim for temporary disability benefits. Tenn. Comp. R. and Regs. 0800-02-17-.15 outlines the specific information to be included in the medical reports of authorized physicians. That rule requires that the reports "shall include . . . physical limitations and expected work restrictions." It also states:

5

If the provider continues to treat an injured or ill employee who is receiving temporary disability payments . . . for the . . . injury, illness or occupational disease, the provider shall provide an updated medical report to the employer, including an assessment of functional progress toward employment (restricted or unrestricted as appropriate), at intervals not to exceed sixty (60) calendar days.

Tenn. Comp. R. & Regs. 0800-02-17-.15(2) (2021). Employer argues that Dr. MacGregor's failure to comply with that rule relieves Employer of its obligation to pay temporary total disability benefits. We disagree.

Employee conceded Dr. MacGregor's treatment notes are silent as to work restrictions. However, her failure to document the work restrictions as contemplated by the rule is not determinative of whether Employee is entitled to temporary disability benefits. As stated at the beginning of Chapter 0800-02-17, the purpose of the rules contained in that chapter, in conjunction with two other chapters, are to "establish a comprehensive medical fee schedule and a related system which includes, but is not limited to, procedures for review of bills, enforcement procedures and appeal hearings." Tenn. Comp. R. & Regs. 0800-02-17-.01(1). The scope of the chapter does not address in any way an employee's entitlement to temporary or permanent disability benefits but is instead meant to ensure the timely exchange of information to facilitate the efficient provision of medical care to injured workers and the payment of medical bills. The rule identifying the required elements of a medical report applies to the physician treating workers' compensation patients, and it is aimed at consistent medical reporting. It does not provide grounds for an employer to cease or fail to initiate temporary disability benefits, especially in the face of evidence establishing an employee's entitlement to such benefits.

Employer also argues that the questionnaires regarding Employee's work restrictions are unreliable because they were not created contemporaneously with her treatment. However, Dr. MacGregor completed the questionnaires while Employee was still actively treating with her; in fact, the record indicates Employee continues to treat with Dr. MacGregor. We are aware of no statutory provision or other binding precedent supporting Employer's view that a treating physician's delay in addressing work restrictions excuses an employer from its obligation to pay temporary disability benefits if an employee comes forward with sufficient evidence supporting such an award. Although there may be circumstances where a delay in obtaining such information could render the evidence less reliable or persuasive, it is the trial court's role to assess and weigh that evidence to determine if Employee has met the applicable burden of proof. In this instance, we find the evidence does not preponderate against the court's order for the payment of additional temporary disability benefits.

Last, Employer argues that Employee failed to comply with authorized medical care, subjecting Employee to a suspension in his benefits as provided in Tennessee Code Annotated section 50-6-204(d)(7). In evaluating whether an employee has failed to comply with medical care, we must first consider Tennessee Code Annotated section 50-6-204(a)(3)(A)(i), which states that when a panel is provided pursuant to that subsection, the employee is required to "accept the medical benefits afforded under this section." As explained in Tennessee Code Annotated section 50-6-204(d)(7), "if the injured employee refuses . . . to accept the medical . . . services that the employer is required to furnish under this chapter, the injured employee's right to compensation shall be suspended and no compensation shall be due and payable *while the injured employee continues to refuse*." (Emphasis added.)

Employer contends Employee's failure to see Dr. Nwofia despite three scheduled appointments constitutes medical noncompliance. The first missed appointment was scheduled for September 21, 2021. Employee testified he had transportation issues, while Employer argues he simply failed to attend the appointment. At the time, Employee was receiving temporary total disability benefits based on the restrictions from Dr. Weisman. Employer continued to pay those benefits until mid-March 2022, and Employee continued to attend all appointments scheduled with Drs. MacGregor and Weisman. As such, although Employer argues it was appropriate to suspend Employee's benefits in March 2022 due to the missed appointment in September 2021, it failed to suspend temporary benefits when the alleged noncompliance occurred. Moreover, we find nothing in the record to indicate Employer communicated with Employee or attempted to determine the reason for the missed appointment. *See Bailey v. Amazon*, No. 2021-01-0057, 2022 TN Wrk. Comp. App. Bd. LEXIS 16, at *10 (Tenn. Workers' Comp. App. Bd. May 3, 2022) (an employer's decision to suspend benefits after two missed appointments without considering the employee's explanation for missing the appointments was not supported by Tennessee law). As such, we conclude the missed appointment in September 2021, even if it constituted medical noncompliance, does not support Employer's termination of temporary benefits.

Turning to the second and third scheduled appointments, it is undisputed Employee rescheduled the September 22, 2022 visit for the following week, citing transportation issues. He did appear for that rescheduled appointment and had his vitals taken, but he left after being told he would need to provide a urine sample. It is Employee's testimony that he was physically unable to provide a urine sample and he had to leave because the appointment had taken longer than expected and his driver needed to return home to her children. The trial court found this explanation "plausible" and determined Employee had not refused medical treatment. Given the discretion we accord a trial court's assessment of witness credibility, *see, e.g., Hodge v. Amazon.com*, No. 2019-01-0499, 2020 TN Wrk.

Comp. App. Bd. LEXIS 63, at *17 (Tenn. Workers' Comp. App. Bd. Oct. 23, 2020), we cannot conclude the trial court erred in its assessment of this issue.

Furthermore, even if the missed appointments establish noncompliance, Employer's remedy would be a suspension of benefits during the period of noncompliance. *See, e.g.*, *Rhodes v. Amazon.com, LLC*, No. 2018-01-0349, 2019 TN Wrk. Comp. App. Bd. LEXIS 24, at *23-24 (Tenn. Workers' Comp. App. Bd. June 11, 2019). Employer's counsel admitted in oral arguments that Employee has attended all appointments with Drs. MacGregor and Weisman and that no follow-up appointment has been scheduled with Dr. Nwofia. As such, there is no evidence of any ongoing refusal to accept medical treatment sufficient to support the suspension of benefits.

### *Frivolous Appeal*

Finally, Employee has asked that we determine this appeal to be frivolous. Employee argues that Employer presented no alternative expert proof regarding restrictions and had no proof of any discussions with Employee regarding his missed appointments. As we have noted previously, a frivolous appeal is one that is devoid of merit or brought solely for delay. *Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016). Here, Employer raised as an issue the admissibility of the medical questionnaires on which the trial court relied in awarding temporary disability benefits. Although we ultimately disagreed with Employer's position on this issue, we do not find Employer's arguments to be so devoid of merit as to justify finding the appeal frivolous.

### Conclusion

For the foregoing reasons, we affirm the trial court's expedited hearing order and remand the case. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Walter McKim | ) | Docket No. 2022-07-0215 |
| | ) | |
| v. | ) | State File No. 45805-2020 |
| | ) | |
| Stansell Electric Company, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard February 22, 2023 |
| Compensation Claims | ) | via Microsoft Teams |
| Allen Phillips, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 13th day of March, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Gregory H. Fuller | | | | X | ghfuller@mijs.com abmcgee@mijs.com |
| Peter Frech | | | | X | pfrech@forthepeople.com hvillamar@forthepeople.com |
| Allen Phillips, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |



Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov